**CARPENTER LAW GROUP**
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone:   619.756.6994
Facsimile:    619.756.6991
todd@carpenterlawyers.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6990
Facsimile:  619.756.6991
jim@pattersonlawgroup.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ED HAZLIN and KAREN ALBENCE, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOTANICAL LABORATOTIRES, INC., a Washington Corporation, SHWABE NORTH AMERICA, INC., a Wisconsin Corporation and BOTANICAL LABORATORIES, L.L.C., a Delaware Limited Liability Company and Does 1 through 20,<br><br>Defendants. | Case No. 13cv00618 KSC<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:        Hon. Karen S. Crawford<br>Location:     Courtroom 1C<br>Date:          March 19, 2015<br>Time:          11:00 a.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................I

TABLE OF AUTHORITIES ...........................................................................II

I.    INTRODUCTION ......................................................................... 1

II.   PROCEDURAL HISTORY AND SUMMARY OF RELEVANT FACTS............. 1

    A.   The Complaints and Claims Alleged ..................................... 1

    B.   Class Counsel' Work Litigating and Settling the Action............................... 3

    C.   Status of the Claims Process After Preliminary Approval............................. 4

III.  SETTLEMENT TERMS ................................................................. 5

    A.   Settlement Class and Class Period ....................................... 5

    B.   Settlement Fund and Settlement Payments to the Class Members ................. 5

IV.  ARGUMENT ................................................................................ 6

    A.   The Notice Was the Best Practicable Under the Circumstances ................... 7

    B.   Final Approval of the Settlement Is Warranted ........................... 9

        1.   Each of the Relevant Factors Supports Final Approval..................... 10

    C.   The Settlement Class Meets the Rule 23 Class Certification Requirements........................................................... 16

        1.   The Class is ascertainable. ............................................... 16

        2.   The Settlement Class satisfies Rule 23(a).......................... 17

        3.   The Settlement Class satisfies Rule 23(b)(3)..................... 20

V.   CONCLUSION...................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    No. C 10-4387, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014).......................12

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ...........................................................................19

*Ballard v. Equifax Check Servs., Inc.*,
    186 F.R.D. 589 (E.D. Cal. 1999).............................................................................22

*Beck-Ellman v. Kaz USA, Inc.*, . ...................................................................................9

*Bridge v. Phx. Bond & Indem. Co.*,
    128 S. Ct. 2131 (2008)............................................................................................23

*Churchill Village, L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ...................................................................................7

*Clesceri v. Beach City Investigations & Protective Servs.*,
    No. CV-10-3873, 2011 U.S. Dist. LEXIS 11676, at *27-28 (C.D. Cal. Jan.
    27, 2011) .....................................................................................................14, 15

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980).................................................................................................22

*Dirienzo v. Dunbar Armored, Inc.*,
    Nos. 09CV2745 and 10CV1931, 2011 U.S. Dist. LEXIS 36650, at *5-6
    (S.D. Cal. Apr. 4, 2011)........................................................................................12

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) .................................................................................13

*Franklin v. Kaypro*,
    884 F.2d 1222 (9th Cir. 1989) ...................................................................................7

*Galvan v. KDI Distrib. Inc.*,
    No. SACV 08-0999, 2011 U.S. Dist. LEXIS 127602, at *24-25 (C.D. Cal.
    Oct. 25, 2011) .........................................................................................................21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................passim

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ...............................................................................9

*In re Emulex Corp.*,
    210 F.R.D. 717 (C.D. Cal. 2002)...............................................................................20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................................14

*In re Nucoa Real Margarine Litig.*,
   No. CV 10-00927, 2012 U.S. Dist. LEXIS 189901, at *35-37 (C.D. Cal.
   June 12, 2012) ..................................................................................... 9

*In re Pac. Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................. 15

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act
   (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ............................. 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989) ..................................................... 15

*In re: GNC Corp. TriFlex Products Marketing and Sales Practices Litigation
   (No. II)*, MDL Case No. 14-2491-JFM (D. Md. June 20, 2014) ......... 11

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ........................................................... 23

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ............................................................. 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,
   Inc.*, 244 F.3d 1152 (9th Cir. 2001) .................................................... 20

*Mazur v. eBay Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009) ........................................................ 17

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................... 18

*McCrary v. Elations Co., LLC*,
   No. EDCV 13-00242, 2014 U.S. Dist. LEXIS 8443, at *32, 36 (C.D. Cal.
   Jan. 13, 2014) ..................................................................................... 19

*Misra v. Decision One Mortg. Co.*,
   No. SA CV 07-0994 DOC (RCx), 2009 U.S. Dist. LEXIS 119468, at *23
   (C.D. Cal. Apr. 13, 2009) ............................................................ 14, 15

*Moheb v. Nutramax Labs., Inc.*,
   No. CV 12-3633, 2012 U.S. Dist. LEXIS 167330 (C.D. Cal. Sept. 4,
   2012) ................................................................................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523, 526 (C.D. Cal. 2004) .......................................... 12, 15

*Nilon v. Natural-Immunogenics Corp.*,
   No. 3:12cv00930, 2013 U.S. Dist. LEXIS 141728 (S.D. Cal. Sept. 30,
   2013) ................................................................................................... 12

*Officers for Justice v. Civil Service Com.*,
   688 F.2d 615 (9th Cir. 1982) ............................................................... 13

*Smith v. Microsoft Corp.*,
   No. 11-CV-1958, 2014 U.S. Dist. LEXIS 12799, at *10 (S.D. Cal. Jan.
   28, 2014) ............................................................................................. 22

*Soto v. Diakon Logistics (Del.), Inc.*,
   No. 08-cv-33, 2013 U.S. Dist. LEXIS 119028, at *6 (S.D. Cal. Aug. 21,
   2013) .................................................................................................................. 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................... 10, 19

*Tandycrafts, Inc. v. Initio Partners*,
   562 A.2d 1162 (Del. 1989) ........................................................................ 13

*Tchoboian v. Parking Concepts, Inc.*,
   No. SACV 09-422, 2009 U.S. Dist. LEXIS 62122, at *12-13 (C.D. Cal.
   July 16, 2009).......................................................................................... 17

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ............................................................... 21, 22

*Vedachalam v. Tata Consultancy Servs., Ltd*,
   No. C 06-0963 CW, 2013 WL 3929119, at *1 (N.D. Cal. July 18, 2013) .................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................... 18

*Weiner v. Dannon Co., Inc.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ............................................................... 18

*Wietzke v. Costar Realty Info., Inc.*,
   No. 09cv2743, 2011 U.S. Dist. LEXIS 20605, at *14 (S.D. Cal. Mar. 2,
   2011) ...................................................................................................... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ................................................................... 21

## Statutes

California Business and Professions Code § 17200 ............................................ 1

## Regulations

*Federal Practice & Procedure* § 1777 ........................................................... 20

*Federal Practice and Procedure* § 1779 ........................................................ 21

## Rules

Fed. R. Civ. P. 23(a)(2).............................................................................. 18

Fed. R. Civ. P. 23(b)(3).............................................................................. 22

Fed. R. Civ. P. 23 (c)(2)............................................................................... 7

Fed. R. Civ. P. 23(e)(2).............................................................................. 10

Rule 23 ................................................................................................... 16

Rule 23(a) ................................................................................................. 17

Rule 23(a)(1) ........................................................................................... 17

Rule 23(a)(3) ........................................................................................... 18

Rule 23(a)(4) ........................................................................................... 19

Rule 23(b)(3) .................................................................................... 20, 23

**Other Authorities**

*Manual for Complex Litigation, Fourth* (4th ed. 2004) ....................................... 9

## I. INTRODUCTION

This is one of the best settlements in any glucosamine cases. Defendants have agreed to pay a $3.1 million Settlement Fund without any reversion to them. Class members can obtain close to a full refund of the retail purchase price for up to six bottles purchased, capped at $100.00, without having to take the risk of not succeeding at class certification or at trial. In addition, the each of the alleged misrepresentations on Defendants' Wellesse Joint Movement Glucosamine products ("Wellesse JMG" or "Products") labeling and related advertising will be removed for a period of three years.

The Court granted preliminary approval of the settlement on October 7, 2014. *See* Doc. No. 45. Final approval is now warranted. Class Members were notified of the pending Settlement in accordance with the Court's preliminary approval order. The positive response of the Class Members to the Settlement provides strong support that final settlement approval is appropriate. Not a single actual Class Member objected to the Settlement and no Class Members opted out of the Settlement. The Settlement provides excellent results, providing almost full refunds to Class Members who took the simple step of submitting the claim form. The Parties respectfully request that the Court grant final approval of the Settlement.

## II. PROCEDURAL HISTORY AND SUMMARY OF RELEVANT FACTS

### A. The Complaints and Claims Alleged

On March 15, 2013, Plaintiff Ed Hazlin filed his Complaint against Defendants Botanical Laboratories, Inc., Schwabe North America, Inc., and Botanical Laboratories, LLC, alleging violations of the California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, and in breach of express warranty, for falsely representing that a line of glucosamine-based dietary supplements, Wellesse JMG, provide certain joint-health benefits. In particular, Plaintiff took issue with the representations that Defendants' Wellesse JMG products: "provide[] EXTRA STRENGTH Glucosamine [which allegedly "protects and rebuilds cartilage tissue to keep your joints flexible and your body active"] and scientifically supported levels of

Chondroitin plus MSM to maintain healthy movement of your joints;" "[k]eep your joints lubricated for improved mobility and flexibility with just 1 oz a day;" "[i]mprove[] Joint Health so you can enjoy the benefits of less joint discomfort and get back to the activities you love;" and that Class Members will "Start to feel it in 7 Days." *See* Class Action Complaint ("Compl.") ¶ 5; SAC ¶ 5. Plaintiff alleged that these representations are deceptive because numerous studies show that the core ingredients in Wellesse JMG— glucosamine and chondroitin—are ineffective in providing the advertised joint-health benefits. *See* Compl. ¶¶ 5-9, 13, 16-31; SAC ¶¶ 5-9, 13-14, 19-48. Plaintiff's lawsuit sought injunctive, declaratory, and monetary relief.

On May 20, 2013, Plaintiff filed a first amended complaint ("FAC"); and on May 30, 2013, Plaintiff Hazlin Filed a Second Amended Complaint ("SAC"), amending the FAC to add Plaintiff Karen Albence and Defendants Botanical Laboratories, Inc. and Schwabe North America, Inc.[1] Doc. Nos. 11-12. Defendants filed a motion to dismiss on June 25, 2013, and after full briefing by the Parties, the Court denied the motion to dismiss on August 8, 2013.  Doc. Nos. 17, 19, 22, 24. Defendants then filed their answer on August 22, 2013. Doc. No. 25.

The Parties participated in an Early Neutral Evaluation Conference on October 25, 2013 with the Honorable Jan Adler.

On December 17, 2013, Plaintiffs, corporate representatives from Defendants, and Defendants' counsel participated in mediation with the Honorable Dickran Tevrizian.

On January 21, 2014, Defendants notified the Court that the Parties reached a settlement. Doc. No. 35. The Parties filed a joint motion for preliminary approval of class action settlement on September 15, 2014.  Doc. No. 42.  The Court preliminarily approved the settlement on October 7, 2014.  *See* Doc. No. 45.

---

[1]  The SAC contains the same causes of action as the Complaint and the FAC, and the allegations by Plaintiffs Ed Hazlin and Karen Albence in the SAC are virtually identical to those raised by Plaintiff Hazlin in the Complaint and the FAC.

**B.      Class Counsel's Work Litigating and Settling the Action**

Prior to the filing of this action, Class Counsel undertook an extensive investigation of the facts, including review of Defendants' publicly available advertisements for Wellesse JMG, and review and analysis of scientific studies and articles relating to the ingredients in Wellesse JMG and in other similar joint-health products. Carpenter Decl. at ¶ 8; Stipulation § I.F.

Before participating in the court-ordered Early Neutral Evaluation Conference before the Honorable Jan Adler on October 25, 2013, the Parties requested and exchanged pre-mediation discovery, including information relating to the sales of Wellesse JMG. Carpenter Decl. at ¶8; Stipulation § 1.F.  On November 27, 2013, Defendants served their initial disclosures, and once permitted by the Court, Plaintiffs served their first sets of interrogatories, requests for admissions, and document requests. *Id.* In preparation for a mediation with the Honorable Dickran Tevrizian on December 17, 2013, the Parties exchanged briefs in support of their respective positions, and Defendants provided additional national sales information and pricing information regarding Wellesse JMG, as well as proposed changes to the Wellesse JMG product labels and associated label statements. Carpenter Decl. at ¶¶8-11; Stipulation §§ I.F and I.H.

Discovery was not needed to calculate Settlement Class Members' damages because they will provide the requisite information regarding whether they purchased 16- or 33-ounce (or both) bottles of Wellesse JMG, and they will be refunded the approximate average retail purchase price of either $15.00 or $18.00 for each purchase, respectively, up to $100.00 in total recovery. Stipulation § IV.A.2.   Any unclaimed money will be distributed to the participating Class Members on a pro-rata basis, and *none will revert back to Defendant.*

With the assistance of Judge Tevrizian (Ret.), Class Counsel was able to engage in arms-length negotiations with counsel for Defendants and reach an agreement to settle this action.  Carpenter Decl. at ¶11.  Class Counsel drafted a detailed, formalized settlement agreement and exhibits and negotiated the language and terms with Defense Counsel until

the Stipulation of Settlement, setting forth all of the settlement terms and the exhibits, was finalized.  *Id.*

C.   **Status of the Claims Process After Preliminary Approval**

Pursuant to the Court's preliminary approval order, notice to the Class began on October 17, 2014.  Notice was provided in multiple ways: publication of a settlement website, an internet based notice campaign, publication in five print magazines, and publication in a local newspaper.  *See* Stipulation § VII; Doc. No. 42.

On October 17, 2014, KCC, the Court-approved settlement administrator, published the settlement website and activated the toll-free number. Carameros Decl. at ¶¶3-5.  KCC also caused the class notice to be published in five leading consumer publications among glucosamine consumers:   Arthritis Today, Better Homes & Gardens, National Geographic, People Magazine (on two occasions), and Reader's Digest. Carameros Decl. at ¶3.

In addition to the notice in print publications, KCC implemented an internet-based notice campaign, causing seventy million (70,000,000) unique web-based impressions over a one to two month period targeted to adults ages thirty five and up (35+). The internet based-campaign included placement of internet website banners on a number of high quality, trusted websites with significant internet browsing audiences, such as USA Today, the Food Network, Everyday Health, CNN, Sporting News, NBC, FOX NEWS Channel, Ancestry.com, Orbitz, Realtor, Kiplinger's, All Recipes.com, CBS, AccuWeather.com, drugstore.com, eHow.com, HGTV.com, Dr Phil and Investorlink, and similar impressions were placed on Facebook.  Carameros Decl. at ¶3.  And in accordance with the California Legal Remedies Act, KCC caused the class notice to be published on four occasions, once per week for four consecutive weeks, in the Legal/Classified section of the San Diego Union Tribune Metro Distribution. Id.

KCC has received no objections to the settlement and no actual class members opted out. Carameros Decl. at ¶¶6-7.

1    KCC has been responsible for receipt and processing of all Claim Forms. The
2    deadline to postmark a claim is February 17, 2015. KCC received valid claim forms from
3    over 2,570 Settlement Class Members. Carameros Decl. 8. If the Court grants final
4    approval, KCC will calculate the settlement payments to the Class Members based on the
5    number of valid claims received. Because the floor of $1,000,000 in total claims has not
6    been met, the claims period will extend an additional 90 days beyond the initial Claims
7    Deadline consistent with the Stipulation. *See* Stipulation of Settlement, Section II A (40).

8    **III.   SETTLEMENT TERMS**

9        **A.    Settlement Class and Class Period**

10       The Stipulation of Settlement defines the Settlement Class as follows:

11            [A]ll persons who purchased Wellesse Joint Movement
12            Glucosamine products in the United States prior to the entry
             of the Preliminary Approval Order.  Excluded from the
13            Settlement Class are: (i) those who purchased the Wellesse
             Joint Movement Glucosamine products for purpose of resale;
14            (ii) those with claims for personal injuries arising from the
             ingestion of one or more Wellesse Joint Movement
15            Glucosamine products; (iii) Defendants and their officers,
             directors, and employees; (iv) any person who files a valid
16            and timely Request for Exclusion; and (v) the Judge(s) to
             whom this Action is assigned and any members of their
17            immediate families.

18   Stipulation § II.36.

19       The "Class Period" is defined as the period of time that Wellessee Joint
20   Movement Glucosamine began to be sold until and including the date the Preliminary
21   Approval Order is entered. *Id.* § II.12. The members of the Class are referred to in this
22   memorandum as the "Settlement Class members."

23       **B.    Settlement Fund and Settlement Payments to the Class Members**

24       The Stipulation of Settlement requires Defendants to pay $3,100,000 (the
25   "Settlement Fund") to settle the Action. Stipulation § IV.A. The Parties estimate that, after
26   deducting the administration costs, attorneys' fees and costs, and modest enhancements for
27   the named Plaintiffs, all of which are subject to the Court's approval, approximately

28

1  $1,577,293.50 (the "Net Settlement Fund") will be available for distribution to Settlement
2  Class Members.

3          Anyone who purchased Wellesse JMG from the time it was sold until January 3,
4  2014, may submit a claim to receive a cash payment from the Settlement Fund. *Id.* For
5  each 16-ounce bottle of Wellesse JMG purchased, Settlement Class Members are entitled
6  to a payment of $15.00, and for each 33-ounce bottle of Wellesse JMG purchased,
7  Settlement Class Members are entitled to a payment of $18.00.   *Id.* Settlement Class
8  Members may seek reimbursement for claims up to $100.00 in total recovery. *Id.*

9          All of the Settlement Fund will be paid out; there is no reversion of any amount to
10 Defendant.  Stipulation § IV.A.3.  The Stipulation of Settlement provides that Settlement
11 Class Members who file a valid claim and do not opt out will receive will receive a pro
12 rata share of any remaining cash amount. *Id.* § IV.C.2.

13         In addition all of Defendants have ceased making representations that Wellesse
14 JMG provides certain joint-health benefits, unless at the time of making such
15 representations, they possess and rely upon competent and reliable scientific evidence that
16 substantiates that the representations are true. Stipulation § IV.B. Such representations
17 regarding Wellesse JMG include the following: "start to feel it in 7 days," "improves joint
18 health," "less joint discomfort," "protects and rebuilds cartilage," "for healthy joint support
19 & mobility," "for healthy joint support and flexibility," "glucosamine is necessary to
20 protect and rebuild cartilage tissue and keep joints strong & healthy," "mobility, flexibility,
21 & lubrication," or substantially similar language that reasonably conveys the same
22 meaning. *Id.*

23 **IV.   ARGUMENT**

24         Federal courts encourage settlement before trial, particularly in class actions and
25 other complex cases, where substantial resources can be conserved by avoiding the time,
26 cost, and rigors of formal litigation. *Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575
27 (9th Cir. 2004) (noting "strong judicial policy" favoring settlements reached, as here,
28 through arms-length, non-collusive negotiations); *Hanlon v. Chrysler Corp.*, 150 F.3d

1011, 1027 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989). These concerns apply with particular force in a case such as this where an allegedly illegal practice affected thousands of consumers.

## A.   The Notice Was the Best Practicable Under the Circumstances

Federal Rule of Civil Procedure 23 (c)(2) requires that the class members receive "the best notice practicable under the circumstances." Fed. R. Civ. P 23 (c)(2). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village*, 361 F.3d at 575.

On October 7, 2014, the Court granted preliminary approval of the Settlement and approved the proposed Notice Plan, including the form and method of class notice.  See Doc. No. 42, Exs. 3, 4, 5, and 6.  The Court approved the establishment of the Settlement Website, as well as the Long Form Notice, Short Form Notice and Publication Notice (collectively "Class Notice"). The court-approved Class Notice advised Class Members of the essential terms of the Settlement, defined the Settlement Class, set forth the procedure for opting out of the Class or filing objections to the Settlement and provided specifics on the date, time and place of the fairness hearing. *See* Doc. No. 42 and Exs. 4, 5, and 6. The Class Notice also provided the details of the case and the proposed settlement and the specific options available to Class Members. *Id.* In particular, it informed Class Members of the settlement amount and proposed distribution of the settlement funds, thereby permitting them to make an informed decision about whether to opt out, submit a claim form or take other or no action. *Id.*

Pursuant to the notice procedure approved in the Court's preliminary approval

order, notice of the class settlement was provided in multiple ways: publication of a settlement website, an internet based notice campaign, publication in five print magazines, and publication in a local newspaper. *See* Stipulation § VII; Doc. No. 42. Accordingly, on or before October 22, 2014, KCC, the Court-approved settlement administrator, published the settlement website and activated the toll-free number. KCC Decl. at ¶¶ 4-5. KCC also caused the class notice to be published in five leading consumer publications among glucosamine consumers: Arthritis Today, Better Homes & Gardens, National Geographic, People Magazine (on two occasions), and Reader's Digest. KCC Decl. at ¶3. In addition to the notice in print publications, KCC implemented an internet-based notice campaign, causing seventy million (70,000,000) unique web-based impressions over a one to two month period targeted to adults ages thirty five and up (35+). The internet based-campaign included placement of internet website banners on a number of high quality, trusted websites with significant internet browsing audiences, such as USA Today, the Food Network, Everyday Health, CNN, Sporting News, NBC, FOX NEWS Channel, Ancestry.com, Orbitz, Realtor, Kiplinger's, All Recipes.com, CBS, AccuWeather.com, drugstore.com, eHow.com, HGTV.com, Dr Phil and Investorlink, and similar impressions were placed on Facebook. KCC Decl. at ¶3. Finally, in accordance with the California Legal Remedies Act, KCC caused the class notice to be published on four occasions, once per week for four consecutive weeks, in the Legal/Classified section of the San Diego Union Tribune Metro Distribution. Id.

Because Defendants sell Wellesse JMG over the counter at retail stores, they do not have a way to identify or locate mailing addresses for the vast majority of individual Class Members. This Court and other district courts in the Ninth Circuit have found notice by publication sufficient where the contact information for class members cannot be obtained through reasonable efforts. *See, e.g.*, *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134, 2013 U.S. Dist. LEXIS 60182, at *9-13, 21-24 (S.D. Cal. Jan. 7, 2013) (granting preliminary approval in case where the contact information for the majority of the class members was unavailable and the notice plan consisted of a publication notice

and a website notice); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 636 (S.D. Cal. 2011) (granting final approval where notice was published online, in newspapers and magazines, and on the settlement website); *see also In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ("When the court certifies a nationwide class of persons whose addresses are unknown, notice by publication is reasonable.") (and cases cited therein); *In re Nucoa Real Margarine Litig.*, No. CV 10-00927, 2012 U.S. Dist. LEXIS 189901, at *35-37 (C.D. Cal. June 12, 2012) (same).

The Notice approved by the Court at the preliminary approval stage was the best notice practicable under the circumstances and fairly apprised Settlement Class Members of the proposed settlement terms and their options.

## B.   Final Approval of the Settlement Is Warranted

Court approval of class action settlements requires three steps:

(1)   Preliminary approval of the proposed settlement at a preliminary hearing;

(2)   Dissemination of mailed and/or published notice of the settlement to all affected Class members; and

(3)   A "formal fairness hearing," or final settlement approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Litigation, Fourth* (4th ed. 2004) ("Manual") § 21.632-34.

The first two steps of this process are now complete. The first step was completed on October 2, 2014, when this Court conducted a hearing and granted preliminary approval to the Settlement. *See* Doc. No. 45. In doing so, the Court determined that the Settlement was within the range of possible final approval and that the Class should be notified of the Settlement's terms and scheduling of the formal fairness hearing. *See id.*

The second step in the class action settlement approval process, the dissemination of the Notice, as just described, is now complete as well.

The last step in the class action settlement approval process is the final approval hearing at which the Court shall determine whether the Settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). At the final approval hearing scheduled on March 19, 2015, Settlement Class Members will have the opportunity to be heard regarding the Settlement, and Class Counsel will present evidence and argument in support of the Settlement. At the conclusion of the final approval hearing, the Court will decide whether to grant final approval of the Settlement and whether to enter a final order and judgment.

### 1.    Each of the Relevant Factors Supports Final Approval

When evaluating the fairness, reasonableness, and adequacy of a settlement, courts consider (i) the strength of the plaintiffs' case; (ii) the risk, expense, complexity, and likely duration of further litigation; (iii) the risk of maintaining class action status throughout the trial; (iv) the amount offered in settlement; (v) the extent of discovery completed and the stage of the proceedings; (vi) the experience and views of counsel; (vii) the presence of a governmental participant;[2] and (viii) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). Each of these factors demonstrate that the proposed Settlement is fair, adequate, and reasonable.

#### a.    The strength of Plaintiffs' case, as well as the risk, expense, complexity, and likely duration of further litigation, favors final approval.

The crux of Plaintiffs' claims is that Defendants represented that Wellesse JMG provides joint-health benefits, but studies on the Products' core ingredients demonstrate that they cannot provide such benefits. Defendants benefited from their representations because Plaintiffs and Class Members purchased the Products based on those representations, but none of the advertised benefits were received.

Although the Parties differ as to the likelihood of Plaintiffs ultimately prevailing at trial, it is apparent that both sides bear risk in proceeding to litigate the case. Plaintiffs and

---

[2] This factor is inapplicable to the present case.

their counsel believe their claims are meritorious, but Defendants have raised and would continue to raise challenges to the legal and factual bases of their claims. There was a real risk that Plaintiffs would not prevail on the merits, as evidenced by the recent decision from the District of Maryland in *In re: GNC Corp. TriFlex Products Marketing and Sales Practices Litigation (No. II),* MDL Case No. 14-2491-JFM (D. Md. June 20, 2014), where the Court granted GNC's motion to dismiss a similar multi-district litigation case in its entirety.

The Settlement strikes a balance between the Parties' positions regarding the Products by providing a fund from which Class Members can obtain refunds for the purchase price of the Products. The Settlement thus provides immediate certainty and valuable benefits to the Class Members, rather than forcing them to wait years for all litigation and appeals to be fully resolved at the risk of recovering nothing.

If this case had not settled, it would have been necessary to continue, as Defendants have done since the inception of this lawsuit, to raise objections to the legal and factual bases of Plaintiffs' claims. Such inquiries would necessarily involve detailed discovery, including expert testimony regarding the precise ingredients in Wellesse JMG, as well as the scope of Defendants' knowledge of the efficacy of those ingredients. The Settlement, on the other hand, balances these costs, risks, and potential for delay against the benefits of settlement, achieving a settlement that is fair and desirable to the Class. *See Dirienzo v. Dunbar Armored, Inc.*, Nos. 09CV2745 and 10CV1931, 2011 U.S. Dist. LEXIS 36650, at *5-6 (S.D. Cal. Apr. 4, 2011) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (*quoting Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

The Settlement's avenues of relief provide meaningful benefits to Class Members. And given the alternative of long and complex litigation before this Court, the expense involved in such litigation, the possibility of further appellate litigation, and the risk that Plaintiffs may not ultimately prevail, the availability of prompt relief under the Settlement

1   is highly beneficial to the Class. By reaching this Settlement, the Parties will avoid
2   protracted litigation and will establish a means for swift resolution of Class Members'
3   claims against Defendants.

4
5   **b.    The risk of maintaining class-action status throughout trial favors final approval.**

6   As stated by the Court in its Order Denying Defendants' Motion to Dismiss (Doc.
7   No. 24, hereinafter "Order"), the courts have wrestled over whether claims similar to
8   those raised by Plaintiffs rely on an incognizable lack-of-substantiation theory and
9   whether a class representative may maintain an action for representations he did not see.
10  *See* Order at 4-5, 6-7 (citing cases). Plaintiffs both read the Wellesse JMG product labels,
11  but this could cause issues with maintaining class action status as to Defendants' other
12  representations. Additionally, several recent decisions denying class certification in cases
13  involving similar class certification issues demonstrate that there is a high degree of risk
14  that class-action status could not be maintained throughout litigation. *See, e.g.*, *Astiana v.*
15  *Ben & Jerry's Homemade, Inc.*, No. C 10-4387, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal.
16  Jan. 7, 2014); *Nilon v. Natural-Immunogenics Corp.*, No. 3:12cv00930, 2013 U.S. Dist.
17  LEXIS 141728 (S.D. Cal. Sept. 30, 2013); *Moheb v. Nutramax Labs., Inc.*, No. CV 12-
18  3633, 2012 U.S. Dist. LEXIS 167330 (C.D. Cal. Sept. 4, 2012).

19
20  **c.    The value of the relief offered in the Settlement favors final approval.**

21  The Settlement has high value and provides substantial economic and non-
22  monetary benefits to the Class in comparison to what Plaintiffs and the Class could
23  achieve through a successful trial. Plaintiffs have steadfastly sought reimbursement of the
24  purchase price of the Products, and as a result, the Class will receive significant cash
25  refunds—up to $100.00 for each Settlement Class Member. Stipulation § IV.A. In
26  addition, Settlement Class Members stand to receive a pro rata share of any remaining
27  cash amount in the Net Settlement Fund.  Stipulation § IV.A.3.

28

1         The Settlement also provides non-monetary to the Class. Defendants have agreed to

2   make certain labeling changes: they will not represent that Wellesse JMG provides certain

3   joint-health benefits unless they possess and rely upon competent and reliable scientific

4   evidence that substantiates that the representations are true, providing consumers with

5   accurate information about the Products. *Id.* § IV.B. This change in Defendants'

6   advertising protocol is attributable to the filing of this Action, and it is considered a non-

7   monetary benefit. *See Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del.

8   1989) (stating that a "benefit need not be measurable in economic terms," and there is a

9   benefit to "[c]hanges in corporate policy . . . if attributable to the filing of a meritorious

10  suit")).

11        It is likely that a successful result at trial would not garner a better result than that

12  achieved by the Settlement. But even if it did, "[i]t is well-settled law that a cash

13  settlement amounting to only a fraction of the potential recovery will not *per se* render the

14  settlement inadequate or unfair." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615,

15  628 (9th Cir. 1982) (*citing Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)).

16  In light of the uncertainties of trial, the value of the Settlement plainly meets (and

17  exceeds) the adequacy standard and renders this factor supportive of the proposed

18  Settlement.

19                 **d.**    **Discovery demonstrating the strengths and weaknesses of**

20                      **this action was completed prior to entering into the Settlement.**

21        "[W]here there has been sufficient information sharing and cooperation in

22  providing access to necessary data, the settlement may be fair and adequate." *Misra v.*

23  *Decision One Mortg. Co.*, No. SA CV 07-0994 DOC (RCx), 2009 U.S. Dist. LEXIS

24  119468, at *23 (C.D. Cal. Apr. 13, 2009) (*citing In re Mego Fin. Corp. Sec. Litig.*, 213

25  F.3d 454, 459 (9th Cir. 2000)). Informal discovery is adequate in a class action settlement

26  because "'formal discovery is not a necessary ticket to the bargaining table' where the

27  Parties have sufficient information to make an informed decision about settlement." *See*

28  *Clesceri v. Beach City Investigations & Protective Servs.*, No. CV-10-3873, 2011 U.S.

Dist. LEXIS 11676, at \*27-28 (C.D. Cal. Jan. 27, 2011) (*quoting Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

Here, before filing the Complaint in March 2013, Class Counsel undertook an extensive investigation of the facts, including review of Defendants' publicly available advertisements for Wellesse JMG, and review and analysis of scientific studies and articles relating to the ingredients in Wellesse JMG and in other similar joint-health products. Stipulation § I.F.

In September 2013, the Court ordered the Parties to participate in an Early Neutral Evaluation Conference. Doc. No. 28. The Parties then requested and exchanged pre-mediation discovery, including information relating to the sales of Wellesse JMG, and participated in settlement negotiations with the Honorable Jan Adler during the Early Neutral Evaluation Conference on October 25, 2013. Stipulation § I.F.

On November 27, 2013, Defendants served their initial disclosures, and once permitted by the Court, Plaintiffs served their first sets of interrogatories, requests for admissions, and document requests. *Id.*

In preparation for mediation with the Honorable Dickran Tevrizian on December 17, 2013, the Parties exchanged briefs in support of their respective positions, and Defendants provided additional national sales information and pricing information regarding Wellesse JMG, as well as proposed changes to the Wellesse JMG product labels and associated label statements. *Id.* §§ I.F and I.H. Discovery was not needed to calculate Settlement Class Members' damages because they would provide the requisite information regarding whether they purchased 16- or 33-ounce (or both) bottles of Wellesse JMG, and they will be refunded the approximate average retail purchase price of either $15.00 or $18.00 for each purchase, respectively, up to $100.00 in total recovery. *Id.* § IV.A.2.

Thus, while this case settled relatively early in the proceedings, the Parties have conducted formal and informal discovery. Discovery was clearly sufficient to provide the background and specific data necessary to evaluate the fairness, adequacy, and

1  reasonableness of the proposed Settlement. *See Misra*, 2009 U.S. Dist. LEXIS 119468, at
2  *11; *see also Clesceri*, 2011 U.S. Dist. LEXIS 11676, at *27-28, 34 (preliminarily
3  approving the settlement where the Parties conducted significant informal discovery).
4  Therefore, Plaintiffs believe they have reviewed the necessary data to make an informed
5  decision about the benefits of the proposed Settlement, and the Court should find that
6  sufficient discovery took place.

7               e.      **The experience and views of counsel favor final approval.**

8         Counsel for Plaintiffs and Defendants, all well versed in complex class action
9  litigation, support the approval of the Settlement—a fact that is accorded "great weight"
10  because counsel have the greatest familiarity with the facts of the litigation and thus "are
11  better positioned than courts to produce a settlement that fairly reflects each party's
12  expected outcome in the litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th
13  Cir. 1995); *accord Wietzke v. Costar Realty Info., Inc.*, No. 09cv2743, 2011 U.S. Dist.
14  LEXIS 20605, at *14 (S.D. Cal. Mar. 2, 2011) (*citing DIRECTV*, 221 F.R.D. at 528);
15  *Clesceri*, 2011 U.S. Dist. LEXIS 11676, at *28-29 ("Counsels' opinions warrant great
16  weight both because of their considerable familiarity with this litigation and because of
17  their extensive experience in similar actions.") (*quoting In re Wash. Pub. Power Supply*
18  *Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989)).

19         Class Counsel, who have significant experience in complex class litigation,
20  including numerous false advertising cases, believe this Settlement is an excellent result
21  for the Settlement Class Members.  *See* Carpenter Decl., ¶¶16-25.  This factor therefore
22  weighs heavily in favor of preliminarily approving the terms of the proposed Settlement.

23               f.      **The positive reaction of the Class Members to the Settlement**
24                       **favors final approval.**

25         Finally, courts look at the reaction of class members in considering whether to
26  approve a settlement as fair, adequate, and reasonable. Of most importance is the fact that
27  not a single Class Member objected to the Settlement.  KCC Decl. at ¶6-7. "[T]he absence
28  of a large number of objections to a proposed class action settlement raises a strong

presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm.*, 221 F.R.D. at 529; *see also*, *Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3929119, at *1 (N.D. Cal. July 18, 2013) (same). Moreover, no Class Members chose to opt out of the Settlement. KCC Decl. at ¶¶6-7. The Court should construe Class Members' overwhelming non-opposition to the Settlement as strong indications of their support for the Settlement as fair, adequate, and reasonable.

For all of the reasons stated above, the Settlement proposed in this action is fair, reasonable and adequate.

## C.   The Settlement Class Meets the Rule 23 Class Certification Requirements

In the preliminary approval order, the Court found that the prerequisites for class certification under Rules 23(a) and (b)(3) had been preliminarily satisfied, and conditionally certified the Settlement Class for settlement purposes.  Doc. No. 45 at 3-4. Because the Settlement Class still satisfies the Rule 23 criteria, the Court should finally certify the Settlement Class.

### 1.   The Class is ascertainable.

As a preliminary matter, the Class is ascertainable.  "'A class definition should be precise, objective, and presently ascertainable,' though 'the class need not be so ascertainable that every potential member can be identified at the commencement of the action.'"  *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009); *see also Soto v. Diakon Logistics (Del.), Inc.*, No. 08-cv-33, 2013 U.S. Dist. LEXIS 119028, at *6 (S.D. Cal. Aug. 21, 2013) (ascertainability is satisfied when it is "administratively feasible to determine whether a particular person is a class member"). The Settlement Class Members have demonstrated that they satisfy the objective criteria of the class definition by either sending in their receipts verifying the purchases of the Wellesse JMG products or, if receipts were unavailable, certifying under oath that such purchases were made. *Accord Hartless*, 273 F.R.D. at 636 (final approval granted even where class members'

addresses were largely unknown to the defendant because class members mailed in claim forms certifying their purchases)). Accordingly, the ascertainability requirement is met here.

### 2.   The Settlement Class satisfies Rule 23(a).

Rule 23(a) of the Federal Rules of Civil Procedure enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Each of these requirements is met.

### a.   Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  The numerosity requirement is readily met here. Up until January 3, 2014, Defendants sold approximately eight million bottles of Wellesse JMG, providing Plaintiffs with an estimate of tens of thousands of Class Members.  *Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422, 2009 U.S. Dist. LEXIS 62122, at *12-13 (C.D. Cal. July 16, 2009) (noting that the exact size of the class is not necessary, but an estimate in the thousands was sufficient).

### b.   Commonality

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Hanlon*, 150 F.3d at 1019 (commonality is "construed permissively").  All questions of fact and law need not be common to satisfy the rule— "commonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (*citing Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)).

The commonality requirement is readily satisfied here. There are multiple questions of law and fact, all arising from Defendants' uniform, deceptive representations that Wellesse JMG will provide numerous joint-health benefits. These representations allegedly injured Settlement Class Members in the exact same way: they all purchased a product which does not perform as represented; and they have been harmed in the amount they paid for the product. See *Weiner v. Dannon Co., Inc.*, 255 F.R.D. 658, 664-65 (C.D.

Cal. 2009) ("The proposed class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising and promotion of the Products," which "are sufficient to satisfy the Ninth Circuit's 'permissive' view of Rule 23(a)(2).") (citation omitted).

### c.   Typicality

Under Rule 23(a)(3), the claims of the representative parties must be typical of the class members' claims. Typicality is satisfied where the plaintiffs' claims are "reasonably co-extensive" with absent Class Members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' claims are typical of those of the Settlement Class because they arise from a common course of conduct and legal theory. They have asserted during this litigation that Defendants engaged in false advertising in violation of consumer-protection laws and breached express warranties to Class members by misstating the joint-health benefits of the Products. The Class representatives allege that they purchased Wellesse JMG products that are within the Class definition; and had they known the truth about Defendants' misrepresentations and omissions, they would not have purchased the Wellesse JMG products. *See, e.g.*, *McCrary v. Elations Co., LLC*, No. EDCV 13-00242, 2014 U.S. Dist. LEXIS 8443, at *32, 36 (C.D. Cal. Jan. 13, 2014) (finding typicality where the plaintiff "purchased Elations believing it was proven to reduce his joint pain," had he "known that Elations was not clinically proven to help with his joint pain, he would not have purchased it," and he "suffered the same type of economic injury and seeks the same type of damages as the putative class members, namely a refund of the purchase price."); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) (finding typicality where the plaintiff and class members "were all exposed to the same alleged misrepresentations on the packages and advertisements," the plaintiff "would not have purchased the Kashi product or would have paid less for [it] had she known it contained artificial ingredients," and the plaintiff "alleges to have suffered the same type of

1  economic injury and seeks the same type of damages as the putative class members;

2  namely, a refund of all or part of the purchase price.") (internal citations omitted).

### d.   Adequacy

4  Rule 23(a)(4) requires the representative parties to "fairly and adequately protect

5  the interests of the class." In the Ninth Circuit, adequacy is satisfied where (i) the interests

6  of the proposed class representatives are not antagonistic to the interests of the Class, and

7  (ii) counsel for the class is qualified and competent to vigorously prosecute the action. *See*

8  *Staton*, 327 F.3d at 957 (*citing Hanlon*, 150 F.3d at 1020).

9  Here, the Class representatives' interests are aligned with those of the Settlement

10  Class, and there are no conflicts or antagonism—they have suffered economic loss from

11  the same misrepresentations disseminated by Defendants. Plaintiffs have fulfilled their

12  duties to the Settlement Class. Throughout the course of this litigation, Plaintiffs have

13  kept abreast of the litigation and been available for multiple communications with

14  Plaintiffs' counsel and provided information for the various pleadings that have been

15  filed. *See* Carpenter Decl. ¶29.

16  Likewise, Plaintiffs' counsel satisfy the adequacy requirement. In retaining Todd

17  Carpenter of Carpenter Law Group[3] and James Patterson of Patterson Law Group,[4]

18  Plaintiffs have employed counsel with the necessary qualifications, experience, and

19  resources to vigorously prosecute this action. Plaintiffs' Counsel have performed

20  extensive work to date in identifying and investigating potential claims in this action,

21  surviving Defendants' motion to dismiss, and successfully mediating and negotiating the

22  proposed Settlement. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las*

23  *Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere

24  fact that counsel were experienced practitioners); *In re Emulex Corp.*, 210 F.R.D. 717,

25  720 (C.D. Cal. 2002) (in evaluating class counsel's adequacy, "a court may examine the

26

27  ---
[3] *See* Carpenter Decl. ¶¶ 27-30.

28  [4]*See* Carpenter Decl. in support of Preliminary Approval; Exhibit C; a true and correct
copy of Patterson Law Group's resume.

attorneys' professional qualifications, skill, experience, and resources," and "may also look at the attorneys' demonstrated performance in the suit itself.") (internal citations omitted).

Based on the lack of antagonism between the interests of Plaintiffs and the Class and Class Counsel' experience in class actions and other complex litigation, the adequacy-of-representation requirement is satisfied.

### 3. The Settlement Class satisfies Rule 23(b)(3).

Certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1777 (2d ed. 1986)). The two inquiries posed by Rule 23(b)(3) are whether (1) questions of law or fact common to the class members predominate over questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (*quoting* Advisory Comm.'s Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., p. 697).

### a. Common questions predominate over individual issues.

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). "Predominance is a test readily met in certain cases alleging consumer . . . fraud," *id.* at 625, "when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position," *Galvan v. KDI Distrib. Inc.*, No. SACV 08-0999, 2011 U.S. Dist. LEXIS 127602, at *24-25 (C.D. Cal. Oct. 25, 2011) (citation omitted).

1
2
3
4
5
6
7
8

The Settlement satisfies the predominance requirement because the evidence necessary to establish Plaintiffs' claims is common to the Class representatives and all members of the Class—they all seek to determine whether Wellesse JMG products provide the advertised joint-health benefits, and whether Defendants' representations were likely to deceive a reasonable consumer. These common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication;" and therefore, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

9
10

### b.  A class action is the superior method to settle this controversy.

11
12
13
14
15
16
17
18
19
20

The superiority requirement's purpose "is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (*quoting* 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1779 at 174 (3d ed. 2005)). Superiority is satisfied "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). If, as here, absent class members are unaware of their rights, no alternatives exist because the likelihood of multiple, individual claims is remote, and therefore "[c]lass action certifications to enforce compliance with consumer protection laws are desirable and should be encouraged." *See Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) (citation omitted).

21
22
23
24
25
26
27

The factors for determining superiority include: (i) class members' interest in individually controlling separate actions; (ii) any litigation on the issues already begun by class members; (iii) the desirability of concentrating the litigation in the particular forum; and (iv) the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190

28

1    (citation omitted); *see also Valentino*, 97 F.3d at 1234 (finding superiority satisfied where

2    granting class certification "will reduce litigation costs and promote greater efficiency").

3        An assessment of the "superiority" factors shows that concentrating the claims in a

4    single forum through a class action is the best procedure for this Settlement. The damages

5    at issue for each Class Member are too low, and the financial burdens of litigation are too

6    high, to incentivize Class Members to litigate their claims individually. *See Ballard*, 186

7    F.R.D. at 600 ("there is little incentive to sue individually" when the size of any

8    individual damages claims are small). "Even if efficacious, these claims would not only

9    unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs.

10   In most cases, litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023;

11   *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980) (class actions

12   "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle

13   to embark on litigation in which the optimum result might be more than consumed by the

14   cost"); *Smith v. Microsoft Corp.*, No. 11-CV-1958, 2014 U.S. Dist. LEXIS 12799, at *10

15   (S.D. Cal. Jan. 28, 2014) ("The most compelling rationale for finding superiority in a class

16   action is the existence of a negative value suit," i.e., certification is justified "where there

17   are no other realistic possibilities for redress and plaintiffs would be unable to proceed as

18   individuals because of the disparity between their litigation costs and what they hope to

19   recover.") (internal quotations and citations omitted).

20       Additionally, Class Members are not already involved in litigation concerning the

21   controversy, and any possible difficulties of managing a class action are vitiated by the

22   fact of this Settlement. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004),

23   *abrogated in part on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 128 S. Ct.

24   2131, 2134 (2008) ("we are not assessing whether this class action will create significant

25   management problems, but instead determining whether it will create relatively more

26   management problems than any of the alternatives (including, most notably, [thousands

27   of] separate lawsuits by the class members)," and where "common issues predominate

28

over individualized issues, we would be hard pressed to conclude that a class action is less manageable than individual actions."). Thus, the requirements of Rule 23(b)(3) are met.

## V.     CONCLUSION

Based on the foregoing, the Parties respectfully request that the Court (1) finally certify the Class for settlement purposes; and (2) grant final approval of the Settlement.

Dated:  February 17, 2015

**CARPENTER LAW GROUP**

By: */s/ Todd D. Carpenter*
       Todd D. Carpenter (CA 234464)
       402 West Broadway, 29th Floor
       San Diego, California 92101
       Telephone:  619.756.6994
       Facsimile:   619.756.6991
       todd@carpenterlawyers.com

       **PATTERSON LAW GROUP**
       James R. Patterson (CA 211102)
       402 West Broadway, 29th Floor
       San Diego, California 92101
       Telephone: 619.756.6990
       Facsimile:  619.756.6991
       jim@pattersonlawgroup.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Todd D. Carpenter, hereby certify that on February 17, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record registered with the CM/ECF system.

*/s/ Todd D. Carpenter*