FILED

2015 MAY 20  PM 3: 04

U.S. DISTRICT COURT
DISTRICT OF CALIFORNIA

7 H                    DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ED HAZLIN and KAREN ALBENCE, on behalf of themselves and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>vs.<br><br>BOTANICAL LABORATORIES, INC., et al.,<br><br>                                    Defendants. | CASE NO. 13cv0618-KSC<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FEES, COSTS AND SERVICE AWARDS**<br><br>[Docs. 47, 49] |

Presently before the Court is (1) Plaintiffs Ed Hazlin and Karen Albence's ("Plaintiffs") Motion for Final Approval of Class Action Settlement [Doc. 49]; (2) the *amicus curiae* brief in opposition filed by Truth in Advertising, Inc. [Doc. 51]; (3) Plaintiffs' Response to the *amicus* brief [Doc. 53]; and (4) Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service Awards [Doc. 47]. Defendants did not file a response to either Motion. No objections to the settlement have been filed by class members. A final approval hearing was held on March 19, 2015. [Doc. 54] Having considered the Motions and the law, the Court GRANTS final approval of the class action settlement, and GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Fees, Costs and Service Awards.

//

## I. BACKGROUND

This case arises out of Defendants' purported misrepresentations of the health benefits of their Wellesse Joint Movement Glucosamine products ("the Products"). The Complaint was filed on March 13, 2013, alleging violations of the Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*; the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*; and, breach of express and implied warranty. [Doc. 1] The parties consented to jurisdiction of the Magistrate Judge, and on August 21, 2014, the case was referred to the undersigned Judge to conduct all proceedings relating to the preliminary and final approval of the settlement and final entry of judgment. [Doc. 40]

The Court held a preliminary approval hearing on October 2, 2014, and issued an Order preliminarily approving the Settlement Agreement on October 7, 2014. [Docs. 44, 45] The Court held a final approval hearing on March 19, 2015. [Doc. 54]

## II. TERMS OF THE PROPOSED SETTLEMENT AGREEMENT[1]

The proposed settlement class consists of:

> [A]ll persons who purchased Wellesse Joint Movement Glucosamine products in the United States prior to the entry of the Preliminary Approval Order. Excluded from the Settlement Class are: (i) those who purchased the Wellesse Joint Movement Glucosamine products for purpose of resale; (ii) those with claims for personal injuries arising from the ingestion of one or more Wellesse Joint Movement Glucosamine products; (iii) Defendants and their officers, directors, and employees; (iv) any person who files a valid and timely Request for Exclusion; and (v) the Judge(s) to whom this Action is assigned and any members of their immediate families.

[Doc. 42-1, p. 50]

The September 15, 2014, Joint Stipulation of Settlement ("Settlement Agreement") requires Defendants to provide the settlement class with injunctive relief by modifying the labeling of and packaging for the products for three years from the

---

[1] The Court, for purposes of this Order, adopts all defined terms as set forth in the Stipulation of Settlement. [Doc. 42-1]

1  effective date of this Order. [Doc. 42-1, p. 56] During those three years, Defendants
2  will not make representations on their product labels that the products contain certain
3  joint benefits, unless at the time of the representations they "possess and rely upon
4  competent and reliable scientific evidence that substantiates that the representations are
5  true." *Id.* The Settlement Agreement also provides the settlement class with monetary
6  relief by establishing a settlement fund of $3,100,000.00. *Id.* at 13.   Authorized
7  claimants will receive up to $15.00 for each 16 ounce bottle of product purchased, and
8  up to $18.00 for each 33 ounce bottle of product purchased, up to a maximum total
9  recovery of $100.00. *Id.* Any cash that remains in the settlement fund following the
10  payment of claims, fees, awards, and costs, will be divided equally among the
11  authorized claimants. *Id.*

12      Attorneys' fees, costs and representative service awards are to be paid from the
13  settlement fund. [Doc. 42-1, p. 68] Defendants agree not to oppose Plaintiffs' request
14  for an attorneys' fee award of 30% of the entire fund ($930,000) plus actual costs. *Id.*
15  Defendants further agree not to oppose Plaintiffs' application for a $3,500 service
16  award to each named Plaintiff. *Id.*  In exchange, Plaintiffs and the settlement class
17  release all of their known and unknown claims related to the labeling, marketing and
18  advertising of the products against Defendants. *Id.* at 65.

19  **III. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
20      A threshold requirement for final approval of the settlement of a class action is
21  the assessment of whether the class satisfies the requirements of Rule 23(a) of the
22  Federal Rules of Civil Procedure, namely: (1) numerosity, (2) commonality, (3)
23  typicality, and (4) adequacy of representation. *Hanlon v. Chrysler Corp.*, 150 F.3d
24  1011, at 1019 (9th Cir. 1998). Additionally, the Court must ascertain that the litigation
25  is one of the types of class actions enumerated in Rule 23(b). *Id.* at 1022. No facts that
26  would adversely affect these various requirements have changed since this Court
27  preliminarily approved the class on October 7, 2014.   Accordingly this Order
28

13cv0618-KSC

1  incorporates by reference its prior analysis and finds that Rule 23(a) and (b) are
2  satisfied as set forth in the Preliminary Approval Order. [Doc. 45, p. 3]

3       Moreover, before granting final approval of a class action settlement, the Court
4  must determine that the class received adequate notice. *Hanlon*, 150 F.3d at 1025.
5  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."
6  *Id.* This Court preliminarily approved the parties' proposed notice plan. *See* [Doc. 45,
7  pp. 5-6] On February 17, 2015, class action administrator Jonathan Carameros, Director
8  of Operations at KCC Class Action Services LLC ("KKC"), filed a declaration
9  detailing the actions KKC has taken with regard to this class action, including
10  providing notice. [Doc. 49-3] A review of the declaration reveals that KKC provided
11  notice in accordance with the notice program set forth in the Settlement Agreement.
12  *See* [Doc. 41-1, Ex. 3, pp. 88-92] Accordingly, the Court finds that the class received
13  adequate notice of the settlement.

14       Finally, under Rule 23(e)(2) of the Federal Rules of Civil Procedure, where the
15  proposed settlement would bind class members, the Court may approve it only after a
16  hearing and on finding that the settlement is fair, reasonable, and adequate. The Ninth
17  Circuit has enumerated various factors that the Court should consider in determining
18  whether a proposed settlement meets the fair, reasonable, and adequate standard,
19  including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and
20  likely duration of further litigation; (3) the risk of maintaining class action status
21  throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
22  completed, and the stage of the proceedings; (6) the experience and views of counsel;
23  (7) the presence of a governmental participant; and (8) the reaction of the class
24  members to the proposed settlement.[2] *Hanlon*, 150 F.3d at 1026. This determination
25  is committed to the sound discretion of the presiding Court. *Id.*

26

27

28  [2] The Rule 23(e)(2) factors do not include consideration of objections of non-class members. The objection of non-class member Truth In Lending, Inc., will be discussed in Section III.C.3 of this Order, *infra*.

1    This Court held a final approval hearing on March 19, 2015 [Doc. 54], and now
2    addresses each of the *Hanlon* factors in turn.

3    **A. Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely**
4    **Duration of Further Litigation**[3]

     Plaintiffs state that they "believe their claims are meritorious," but that
5    "Defendants have raised and would continue to raise challenges to the legal and factual
6    bases of their claims." [Doc. 49-1, p. 17] Plaintiffs assert there is "a real risk that
7    Plaintiffs would not prevail on the merits," relying at least in part on a recent decision
8    from the District of Maryland dismissing a factually-similar glucosamine case. *Id.*
9    (citing *In Re: GNC Corp. TriFlex Prods. Mktg. & Sales Practices Litig.*, MDL Case
10   No. 14-2491-JFM, 2014 WL 2812239 (D. Md. June 20, 2014)).

11   Moreover, the claims admittedly involve complex issues of law that would
12   require extensive resources and time to research and resolve. *Id.* Settlement eliminates
13   these risks. Given that full litigation of these issues would be a timely and costly
14   endeavor not guaranteed to yield any benefit to the class, the Court finds that these
15   factors weigh in favor of approving the Settlement.

16   **B. Risk of Maintaining Class Action Status Throughout the Trial**

17   Plaintiffs assert that there is "a high degree of risk that class-action status could
18   not be maintained throughout the litigation" [Doc. 49-1, p. 18], and that "Defendants
19   adamantly dispute Plaintiffs' ability to certify a class" [Doc. 49-2, p. 6]. Indeed, the
20   fact that Plaintiffs only saw Defendants' representations on the product label – and not
21   in print or online media or advertising – could create issues with maintaining class
22   action status, as class representatives may have seen other representations. *See* [Doc.
23   49-1, p. 18] In light of Defendants' non-objection to certification for the purposes of
24   settlement only, the Court finds that this factor favors approving the settlement.

25   //

26   //

27

28   _____
     [3] The Court finds that the first two *Hanlon* factors contain significant overlap,
     and so combines them for the purpose of this analysis.

13cv0618-KSC

## C. Amount Offered in Settlement

The Settlement Agreement provides class members with both injunctive and monetary relief as described in Section II, above. The Court finds that the settlement is a good result for the Class as it eliminates the risks, expenses, and delay associated with continued litigation. Moreover, the proposed Settlement was the product of informed, non-collusive negotiations conducted by the parties at arm's length with the assistance and guidance of an experienced mediator, the Honorable Dickran Tevrizian, United States District Court Judge (ret.). For the reasons explained below, the amount offered in settlement weighs in favor of granting final approval.

### 1. Monetary Relief

The monetary relief afforded to class members is substantial. Authorized claimants will be entitled to receive full cash compensation for their purchase(s) of the product, up to $100. [Doc. 42-1, p. 55] Claimants who no longer possess receipts or proof of purchase may establish a claim simply by certified under penalty of perjury that they purchased the product. *Id.* Because any money left over in the settlement fund will be distributed *pro rata* among authorized claimants (rather than reverting back to Defendants), *id.*, claimants may in fact receive a windfall. *Id.* The Court finds that this is an extremely good monetary result for class members.

### 2. Injunctive Relief

The Settlement Agreement requires Defendants to modify the labeling and packaging of the products for three years from the effective date of this Order. [Doc. 42-1, p. 56] This Court questioned the parties at the March 19, 2015, hearing about whether a permanent injunction, or one with a scope reaching beyond labeling and packaging, would better serve the class members' interests. *See Pearson v. NBTY, Inc.,* 772 F.3d 778, 784-85 (7th Cir. 2014) (holding that the district court abused its discretion in approving a glucosamine class action settlement, in part because the settlement called for only a 30-month injunction which was so narrow that it did not result in any "substantive change[s]" to the language to be used by defendants in

advertising the product's health and wellness benefits).   After hearing defense counsel's arguments at the final approval hearing, this Court is convinced that the injunction proposed by the Settlement Agreement fairly balances the parties' interests. The Defendants will maintain an interest in continuing to market their product, and do not concede that any of their advertisements are false.  For this Court to require the same would preclude settlement altogether, to the disadvantage of the parties and class members.   Plainly put by defense counsel, "we would not agree to a permanent injunction." [Doc. 55, p. 28] Counsel also asserts that Defendants lack the ability to control what claims are made by third-party retailers or competitors of their product, and that a broader injunction regulating (for example) internet advertising would be impracticable "because other retailers pick up historic advertising and carry it forward sometimes." *Id.* at 38. Because Defendants do not have the same control over online claims as they do over their product labels and packaging, the settlement is logically limited to the latter.

While Plaintiffs might have been better served by a permanent injunction, the parties' proposed injunction represents a compromise that benefits Plaintiffs by affording them quick and certain injunctive relief without the delay and risks inherent in litigation.   This Court concludes that the proposed injunctive relief is fair and reasonable under the circumstances of this case.

**3. *Amicus* Brief**

While no class members objected to or opted out of the settlement, the Court received an *amicus curiae* brief in opposition to the settlement from an organization called Truth In Advertising, Inc. ("TINA.org"). [Doc. 51] This Court also permitted TINA.org to appear through counsel at the final settlement approval hearing. [Doc. 54] TINA.org objects to the terms of the proposed injunctive relief, arguing, *inter alia*, that the injunction is too limited in scope and duration. [Doc. 51, p. 2] TINA.org's arguments appear to be almost exclusively premised on the Seventh Circuit's decision

1  in *Pearson*, 772 F.3d 778 (7th Cir. 2014). TINA.org urges this Court to deny approval

2  of the settlement. [Doc. 48-1, p. 3] For the reasons explained herein below, this Court

3  declines to give weight to arguments raised in the *amicus* brief.

4        Rule 23(e)(5) of the Federal Rules of Civil Procedure permits a *class member* to

5  object to a proposed class settlement. "The plain language of Rule 23(e) clearly

6  contemplates only allowing class members to object to settlement proposals." *Gould*

7  *v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989); *see* FED. R. CIV. P. 23(e)(5). Thus,

8  "non-class members have no standing to object," and routinely allowing them to inject

9  their concerns at the settlement stage "frustrates th[e] goal" of encouraging settlements.

10  *Id.*; *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021,

11  1032 (N.D. Cal. 1999).

12        While a party may lack standing to object, the trial court may still "consider or

13  even solicit the views of non-parties to proposed class settlements." *Gould*, 883 F.2d

14  at 284 n.3. A Court retains broad discretion to either permit or reject the appearance

15  of *amicus curiae*. *Gerritsen v. de la Madrid Hurtado*, 819, F.2d 1511, 1514 n.3 (9th

16  Cir. 1987). "A court may grant leave to appear as an *amicus* if the information offered

17  is timely and useful." *Waste Mgmt. Of Penn., Inc. v. City of York*, 162 F.R.D. 34, 36

18  (M.D.Pa. 1995). *Amicus* briefs which are unhelpful or fail to present unique

19  information or which raise issues not addressed by the parties may be disregarded.

20  *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003)

21  ("In the absence of exceptional issues,... we do not address issues raised only in an

22  *amicus* brief."); *Neonatology Assocs. v. Comm'r of Internal Revenue*, 293 F.3d 128,

23  133 (3rd Cir. 2002) (Alito, J.) (explaining that a Court may "simply disregard" *amicus*

24  briefs which are unhelpful).

25        In this case, TINA.org does not represent any class member and therefore may

26  not object on behalf of a class member pursuant to Rule 23(e)(5). *Amicus* counsel

27  stated at the final approval hearing that "the purpose of us... participating here as an

28

1  *amicus* is to give the Court additional information [about] what's going on in other
2  places throughout the country." [Doc. 55, p. 37] This Court presumes that counsel's
3  allusion to "places throughout the country" primarily refers to the Seventh Circuit,
4  since the majority of TINA.org's arguments were premised on the *Pearson* decision.
5  However, this Court was already aware of the *Pearson* decision by virtue of its own
6  legal research and Plaintiffs' moving papers. *See* [Doc. 42-2, p. 6] (citing the *Rexall*
7  cases). Further, upon questioning, counsel for TINA.org was unable to provide
8  citations to any controlling law in this jurisdiction or in the Ninth Circuit about which
9  the Court had no knowledge. *See* [Doc. 55, pp. 42-43] Because TINA.org failed to
10 raise unique or helpful information, the Court exercises its discretion to disregard the
11 *amicus* brief.
12 **D.  Extent of Discovery Completed and Stage of the Proceedings**
13         This case settled at an early litigation stage, the parties having only engaged in
14 an early neutral evaluation conference and a case management conference. [Docs. 30,
15 34] However, in preparation for mediation with the Honorable Dickran Tevrizian on
16 December 17, 2013, the parties conducted both formal and informal discovery. [Doc.
17 49-2, p. 3] Class counsel also undertook extensive investigation of the facts prior to
18 filing the Complaint, including review of Defendants' publicly available product
19 advertisements and review and analysis of scientific studies and articles relating to the
20 product and other similar joint-health products. *Id.* As it appears that class counsel
21 had significant information going into the settlement negotiations, the Court finds this
22 factor favors approval.
23 **E.  Experience and Views of Counsel**
24         Counsel for Plaintiffs and Defendants – "all well versed in complex class action
25 litigation" – support approval of the Settlement. [Doc. 49-1, p. 21] Class counsel are
26 familiar not merely with the facts of this particular suit, but have also litigated a
27 significant number of false advertising class action suits for consumers, representing
28

1  thousands of purchasers of consumer products, food, food supplements and over-the-
2  counter drugs. [Doc. 49-2, pp. 7-8] Defense counsel is similarly experienced, and has
3  successfully litigated numerous class action cases in this District, including some
4  against Plaintiffs' counsel. [Doc. 55, p. 26] Accordingly, the Court finds that this factor
5  weighs in favor of granting final approval.

6  **F.  Reaction of Class Members to the Proposed Settlement**

7  This Court finds that this factor strongly weighs in favor of settlement approval.
8  At the final approval hearing, the Court asked class counsel to estimate the number of
9  class members who purchased Defendants' product during the proposed class period.
10 [Doc. 52, p. 5] While unable to provide an exact estimate, class counsel reported that
11 approximately eight million units of product were sold, and he approximated a
12 repurchase rate of three or four units per customer.  *Id.* at 6.  The settlement
13 administrator reported that 70.6% of the class received notice of the Settlement, on an
14 average of 1.8 times per class member. [Doc. 49-3, p. 2]

15 Accepting the estimates of class counsel and the settlement administrator, of the
16 potentially hundreds of thousands of class members who were notified of the
17 settlement, not one filed an objection. [Doc. 49-3, p. 3] Furthermore, not one class
18 member opted out. *Id.* The Court construes the class members' non-opposition to the
19 settlement as a strong indication of their support that the Settlement is fair, adequate
20 and reasonable.

21 **G.  Balancing**[4]

22 Given that all of the applicable *Hanlon* factors favor approval of the Settlement
23 Agreement, this Court GRANTS the Motion for Final Approval. [Doc. 49]

24 //

25 //

26

27

28 _____
   [4] The final *Hanlon* factor, the presence of a government participant, is not
   relevant here and neither weighs for nor against Settlement approval.

# IV. MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

## A. Attorneys' Fees

Federal Rule of Civil Procedure 23(h) permits a Court to award reasonable attorneys' fees "authorized by law or by the parties' agreement." The Ninth Circuit has affirmed two separate methods for determining attorneys' fees, depending on the case. *Hanlon*, 150 F.3d at 1029. In "common-fund" cases such as this one, where the settlement or award creates a large fund for distribution to the class, the Court has discretion to use either a percentage or lodestar method to calculate attorneys' fees. *Id.* In this case, because the benefit to the class is easily quantified by looking to the common fund, the Court will calculate fees using the percentage method, and cross-check the fees for reasonableness using the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

In applying the percentage method, the Court awards the attorneys a percentage of the fund sufficient to provide Class Counsel with a reasonable fee. *Hanlon*, 150 F.3d at 1029. The Ninth Circuit has established 25% of the common fund as a benchmark for attorneys' fees, *id.*, and has recognized that percentage fees in the range of 20-30% are generally appropriate. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Here, class counsel seeks 30% of the common fund, citing (1) the excellent results achieved for the class; (2) the significant risk of litigation and contingent nature of the fees; (3) the complexity of the litigation; (4) the high quality of counsel's work; (5) the awards made in similar cases; and (6) the lack of class member objections to the request for fees. [Doc. 47-1, pp. 15-19] The Court agrees that class counsel obtained an excellent result for class members, who stand to receive full cash refunds for their purchase(s) of the products (up to $100), and an additional windfall as the remainder of the $3.1 million settlement fund will be distributed *pro rata* to claimants following the payment of all claims, costs, fees and awards. Furthermore, counsel undertook a significant risk in this litigation as at least

1 | one other similar class action was recently dismissed by the District Court of Maryland.
2 | *See In Re: GNC Corp. TriFlex Prods. Mktg. & Sales Practices Litig.*, MDL Case No.
3 | 14-2491-JFM, 2014 WL 2812239, at * 4 (D. Md. June 20, 2014). In light of the unique
4 | circumstances of this case and the Settlement, the Court finds that an award of 30% is
5 | appropriate.

6 | However, this Court concludes that the percentage awarded to class counsel must
7 | be calculated *after* costs are withdrawn from the Fund. The Ninth Circuit has said that
8 | a percentage of recovery fee award is calculated by taking a percentage of the
9 | "common fund for the benefit of the entire class." *In re Bluetooth Headset Prods.*
10 | *Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). This Court concludes that costs
11 | associated with filing the litigation, participating in mediation, and paying the
12 | settlement administrator are administrative in nature and should not be included as part
13 | of the overall value of the settlement received by the class members. Instead, those
14 | costs should be deducted from the common fund before attorneys' fees are calculated
15 | on a percentage basis. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014)
16 | ("[A]dministrative costs should not have been included in calculating the division of
17 | the spoils between class counsel and class members. Those costs are part of the
18 | settlement but not part of the value received from the settlement by the members of the
19 | class.")

20 | The recent Ninth Circuit case cited by class counsel at the final approval hearing,
21 | *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) ("Netflix
22 | case"), does not convince the Court otherwise. Therein, the Ninth Circuit held that the
23 | District Court did not err in calculating the attorneys' fee award as a percentage of the
24 | total settlement fund, including notice and administrative costs. *Id.* at 953. The Ninth
25 | Circuit's rationale for so holding was that "[w]e have repeatedly held that the
26 | reasonableness of attorneys' fees is not measured by the choice of the denominator."
27 | *Id.* (citation omitted); *see Staton v. Boeing Co.*, 327 F.3d 938, 974-75 ("We have said
28 |

13cv0618-KSC

1   that the choice of whether to base an attorneys' fee award on either net or gross

2   recovery should not make a difference so long as the end result is reasonable"). Under

3   this Court's reading of the opinion, *In re Online DVD-Rental* does not *compel* district

4   courts to include administrative and notice costs in their percentage fee calculations;

5   it simply permits courts to do so if they wish. For the reasons stated above, this Court

6   finds that a reasonable attorneys' fee award in this case is one that is calculated after

7   the administrative costs of settlement are deducted.

8          The total settlement fund is $3,100,000. For reasons discussed in Section IV.B,

9   *infra*, this Court awards counsel $4,633.59 in costs. The parties report that the

10  settlement administrator's costs and fees are $580,749.00. *See* "Proposed Order

11  Granting Final Approval of Class Action Settlement," p. 4 (lodged with this Court by

12  class counsel on February 17, 2015). Subtracting these costs and fees from the

13  settlement fund leaves a remainder of $2,514,617.41. Thirty percent of the settlement

14  fund after deduction of administrative costs and fees is $754,385.22. This Court

15  awards attorneys' fees in that amount.

16         A cross-check using the lodestar method reveals that an award of $754,385.22

17  in attorneys' fees is reasonable. Attorney Todd Carpenter reports an hourly rate of

18  $600 per hour, which this Court finds reasonable given his class action experience and

19  the San Diego and national market. [Doc. 47-2, p. 4] Attorney Carpenter has provided

20  a summary of the time spent by the Carpenter Law Group in the prosecution of this

21  action, and this Court also finds the total (275.7 hours) to be reasonable. Therefore,

22  applying the lodestar method for calculating attorneys' fees, Mr. Carpenter's hourly

23  fees are $165,420. *Id.* at 5-7.

24         Attorney James Patterson, who has been in practice for 15 years, reports that his

25  hourly billing rate is $750 per hour; his colleague Camille Bass, who has been in

26  practice for 8 years, bills at $575 per hour; and his colleague Elizabeth Favret, who has

27  been in practice for 4 years, bills at $375 per hour. [Doc. 47-3, pp. 3-4] The Court finds

28

1  Mr. Patterson's hourly rate of $750 per hour to be high for an attorney with his
2  experience in a class action litigation in this District.  *See Carr v. Tadin, Inc.,* __
3  F.Supp.3d__, 2cv3040-JLS, 2014 WL 7499454, at *6-8 (S.D.Cal. Dec. 5, 2014)
4  (comparing reasonable hourly rates among class action counsel in the Southern District
5  of California).  Nonetheless, the Court gives counsel the benefit of the doubt and
6  approves all three reported hourly rates as reasonable for the purpose of this lodestar
7  cross-check.  The Court has reviewed Attorney Patterson's summary of the hours
8  expended by his firm on this litigation, and finds it to be reasonable.  [Doc. 47-3, pp.
9  3]  Applying the lodestar method, Mr. Patterson's and his colleagues' fees total
10 $96,070.

11       Counsel's total fees using the lodestar method are $261,490.00.  The Court's
12 award of $754,385.22 reflects a 2.88 multiplier.  This Court finds that the 2.88
13 multiplier is more appropriate than the 3.5 multiplier urged by counsel [Doc. 47-1, p.
14 21] and confirms that an attorneys' fee award of $754,385.22 is reasonable under the
15 circumstances of this case.

16       In sum, the Court awards attorneys' fees in the amount of $754,385.22.[5]

17 **B. Costs**

18       "An award of standard costs in federal district court is normally governed by
19 Federal Rule of Civil Procedure 54(d), even in diversity cases."  *Champion Produce*
20 *Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citation omitted); *Carr*
21 *v. Tadin, Inc.*, __ F.Supp.3d__, 2cv3040-JLS, 2014 WL 7499454, at *11-12 (S.D.Cal.
22 Dec. 5, 2014).  Rule 54(d) of the Federal Rules of Civil Procedure provides that
23 "costs... should be allowed to the prevailing party" as enumerated in 28 U.S.C. § 1920.
24 Under § 1920, "taxable costs are limited by statuie and modest in scope." *Taniguichi*
25

26      [5] Because this Court concludes that the fee award of $754,385.22 is reasonable,
this Court would award the same even under class counsel's preferred method of
27 calculating the fee as a percentage of the total settlement fund, administrative and
notice costs included.  In that event, this Court would award counsel a smaller
28 percentage of the fund, such as the 25% benchmark approved by other Courts.

1   *v. Kan Pac. Saipan, Ltd.,* __ U.S. __, 132 S. Ct. 1997, 2006 (2012).  "Ordinary
2   attorney's travel costs,... long-distance phone calls, Federal Express and local delivery
3   service, office expenses, postage, and typing charges are not 'costs' as that term is used
4   in 28 U.S.C. § 1920, but are in fact out-of-pocket expenses."  *In re Glacier Bay*, 746
5   F.Supp. 1379, 1394 (D. Alaska 1990).

6        Class counsel seeks reimbursement for costs in the amount of $4,957.50. [Docs.
7   47-2, p. 8; 47-3, p. 4] The Court has reviewed both attorneys' summary of costs and
8   concludes that charges for "copies, telephone and related pro rata overhead" and "client
9   meal(s) and related reimbursable costs" do not fall within the narrow scope of 28
10  U.S.C. § 1920.  However, the remainder of the costs for filing fees, document services,
11  and mediation expenses, are reasonable and reimbursable.  Accordingly, the Court
12  awards counsel costs in the amount of $4,633.59.

13  **C.  Class Representative Service Award**

14       Finally, class counsel seek service awards of $3,500 for each of the class
15  representatives. [Doc. 47-1, p. 24] Incentive awards are "fairly typical" discretionary
16  awards "intended to compensate class representatives for work done on behalf of the
17  class, to make up for financial or reputational risk undertaken in bringing the action,
18  and, sometimes, to recognize their willingness to act as a private attorney general."
19  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citations omitted).
20  In deciding whether to give an incentive award, the Court may consider, *inter alia*:

21       1) the risk to the class representative in commencing suit, both financial
22       and otherwise; 2) the notoriety and personal difficulties encountered by
         the class representative; 3) the amount of time and effort spent by the
23       class representative; 4) the duration of the litigation; and 5) the personal
         benefit (or lack thereof) enjoyed by the class representative as a result of
24       the litigation.

25  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D.Cal. 1995) (citations
26  omitted).

27

28

Class counsel justify the requested service awards on the grounds that the class representatives both "assisted Class Counsel in prosecuting this case, including providing factual background, reviewing pleadings and discovery, attending a mediation, and communicating with class counsel to remain informed of the progress of the case." [Doc. 47-1, p. 24] Class counsel provides examples of other incentive awards in similar cases to establish the reasonableness of this figure. *Id.* While the risk, difficulties, and amount of time class representatives likely had to commit to this action was minimal, the awards do appear to be in line with those awarded in similar actions. Accordingly, the Court GRANTS the requested service awards.

## V. CONCLUSION

In light of the foregoing, the Court GRANTS Plaintiffs' Motion for Final Approval and GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. Having duly considered all submissions and arguments presented, IT IS HEREBY ORDERED, DECREED AND ADJUDGED AS FOLLOWS:

1. The Court, for purposes of this Order, adopts all defined terms as set forth in the Settlement Agreement.

2. The Court declines to give any weight to the *amicus* brief or arguments of non-party TINA.org.

3. The Court hereby GRANTS final approval of the settlement upon the terms and conditions set forth in the Settlement Agreement and approved by this Court's order of October 7, 2014. The Court finds that the terms of the Settlement are fair, reasonable, and adequate and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

4. The Court finds that, for purposes of approving the settlement, the proposed settlement class meets all of the requirements for certification under FRCP Rule 23: (a) the proposed settlement class is ascertainable and so numerous that joinder

of all members is impracticable; (b) there are questions of law and fact common to the proposed settlement class and there is a well-defined community of interest among members of the proposed settlement class with respect to the subject matter of the litigation; (c) the claims of the representatives of the settlement class, Ed Hazlin and Karen Albence and potential defenses thereto, are typical of the claims and defenses thereto of the members of the proposed settlement class; (d) the representatives of the settlement class, Ed Hazlin and Karen Albence, will fairly and adequately protect the interests of the settlement class; (e) the counsel of record for the representatives of the settlement class are qualified to serve as counsel for the class and have no conflicts of interests with any settlement class member; (f) common issues of fact and law predominate over individual issues; and (g) a class action is superior to other available methods for an efficient adjudication of this controversy.

5.    For purposes of this Order, the Court hereby certifies for settlement purposes the class defined in Section II, *supra*.

6.    The Court appoints Ed Hazlin and Karen Albence as the class representatives.

7.    The Court appoints Jim Patterson of Patterson Law Group, APC, and Todd D. Carpenter of Carpenter Law Group as class counsel.  Class counsel is authorized to act on behalf of settlement class members with respect to all acts or consents required by, or which may be given pursuant to, the settlement, and such other acts reasonably necessary to consummate the settlement.

8.    The Court finds the Settlement Agreement was the product of serious, informed, non-collusive negotiations conducted at arm's length by the parties in the presence of the Honorable Dickran Tevrizian, United States District Court Judge (Ret.). In making these findings, the Court considered, among other factors, the total potential damages claimed in this action on behalf of Plaintiffs and members of the settlement

13cv0618-KSC

class, Defendants' potential liability, the risks of continued litigation, the equitable relief provided by the settlement, the substantial cash benefits available to class members as part of the settlement, and the fact that the proposed settlement represents a compromise of the parties' respective positions rather than the result of a finding of liability at trial.  The Court further finds that the terms of the Settlement Agreement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member of the settlement class.  The Court also finds that settlement at this time results in substantial benefits to the settlement class and will avoid additional substantial costs, as well as avoid the delay and risks that would be presented by the further prosecution of this action.

9.     Notice of the settlement directed to the settlement class members has been completed in conformity with the Court's preliminary approval order of October 7, 2014.  Distribution of notice of the settlement by the means dictated in the Court's October 7, 2014, Order was the best notice practicable under the circumstances and was in full compliance with the United States Constitution and the requirements of due process. The Court further finds that said notice program fully and accurately informed settlement class members of all material elements of the proposed class action Settlement, of each member's right to be excluded from the settlement class, and each member's right and opportunity to object to the proposed class action settlement.

10.     No settlement class members have timely requested exclusion from the settlement class.  No settlement class member has objected to the settlement.

11.     All settlement class members shall be bound by the releases set forth in the Settlement Agreement.

12.     To the extent permitted by law, all settlement class members who have not timely excluded themselves from the settlement class are permanently barred and

enjoined from asserting against the Defendants any claims released in the Settlement Agreement.

13.    Based upon the agreement of the parties and as hereby ordered by the Court: Defendants shall adhere to the injunctive relief mandate of the Settlement Agreement for a period of three years.

14.    The Court hereby awards class counsel reasonable attorneys' fees in the amount of $754,385.22 and costs in the amount of $4,633.59 to be paid from the settlement fund.

15.    The Court hereby awards each of the class representatives, Karen Albence and Ed Hazlin, an enhancement award in the amount of $3,500.00 for their services as representatives for the settlement class, to be paid to each of them from the settlement fund.

16.    The Court hereby approves the settlement administrator's fees and costs in the amount of $580,749.00, which is to be paid from the settlement fund.

17.    The Court hereby directs the parties and the settlement administrator, to promptly effectuate all terms of the settlement.

18.    The Court hereby dismisses this action with prejudice pursuant to the terms set forth in the Stipulation of Settlement. Each of the parties is to bear its own costs except as expressly provided herein, in the Settlement Agreement and/or in this Court's Order. Without affecting the finality of the judgments in any way, this Court hereby retains continuing jurisdiction over the interpretation, implementation and enforcement of the Settlement and all orders and judgments entered in connection therewith.

/ /

/ /

/ /

19.     Under Rule 58 of the Federal Rules of Civil Procedure, the Court, in the interests of justice, there being no just reason for delay, expressly directs the Clerk of the Court to enter this Order as a judgment, and hereby decrees, that upon entry, it be deemed as a final judgment.

**IT IS SO ORDERED.**

Date: May 20 , 2015

KAREN S. CRAWFORD
United States Magistrate Judge

13cv0618-KSC